# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MAGAN MARIE MAYS,

       Plaintiff,

       vs.                                    No. 09-CV-662 WJ/KBM

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF LINCOLN, SHERIFF
RICKY VIRDEN in his Official Capacity as
Sheriff of Lincoln County, New Mexico,
COURT SERVICES, INC., ALBERT PRESTON LONG;
(John Doe) POLK, JOHN DOE ONE AND
JOHN DOE TWO,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss in Lieu of Answer and Request for Stay, filed December 23, 2009 (**Doc. 8**). Plaintiff brings federal and state law claims against Defendants for violations of her federal constitutional rights and state tort law which occurred while being transported in custody from Tennessee to New Mexico. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and shall be granted.

### Background

Plaintiff was incarcerated in Tennessee. The Lincoln County Defendants[1] engaged Court Services, Inc. to transport Plaintiff to New Mexico. According to the complaint, during the

---

[1] The "Lincoln County Defendants" are the Board of County Commissioners of Lincoln County and Defendant Virden in his official capacity as the Sheriff of Lincoln County, New Mexico.

transport, Defendant Long, an employee of Court Services, Inc. ("Court Services") sexually assaulted Plaintiff. The complaint also alleges that at various times during transport, Defendant Long sexually molested, assaulted, battered, intentionally inflicted emotional distress, and falsely imprisoned Plaintiff. He allegedly choked Plaintiff with his belt and slapped and bit her for his sexual gratification, and that at various times during transport, he threatened to shoot her. Plaintiff is suing the Board of County Commissioners of Lincoln County and Sheriff Ricky Virden ("Lincoln County Defendants" of "Defendants" for purposes of this motion) as well as Defendants Long, Polk and John Does.[2]

## Discussion

In the instant motion, the Lincoln County Defendants seek dismissal of Plaintiff's state law tort claims on various grounds, arguing mainly that the Lincoln County Defendants did not have control over Court Services's employees such that it can be held liable for those employees' wrongdoing.[3] Defendants initially contended that Defendant Virden is entitled to qualified immunity, but ultimately seeks the dismissal of Defendant Virden from this lawsuit.

**I.     Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] The individual Defendants have not been served. Plaintiff states that discovery from Court Services, Inc. may be necessary in order to learn addresses for these individuals. Compl., ¶ 9.

[3] Defendants do not move for dismissal regarding any of the federal constitutional claims asserted against any of the Defendants except for Defendant Virden. The Court notes that the contours of Plaintiff's federal claims are rather imprecise and inartfully pleaded. For example, Plaintiff asserts an "unlawful assault and battery" claim "in violation of the fourth, eighth, and fourteenth amendments to the United States Constitution"; and also alleges an "invasion of privacy" claim in Count II in violation "in violation of the fourth, eighth, and fourteenth amendments to the United States Constitution." Compl., ¶¶ 53, 59.

accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## II.     Vicarious Liability of Lincoln County for State Law Claims

The basis for Defendants' motion is that Lincoln County ("County") cannot be held liable for the actions of a Court Services's employee because even though the County hired Court Services, Court Services was an independent contractor. In order to hold the County Defendants liable for the tortious acts of Court Services's employees, Plaintiff is required to prove that the County was the employer. *See Cain v. Champion Window Co. of Albuquerque, LLC*, 142 N.M. 209, 213 (Ct.App. 2007); *see* UJI 13-406 NMRA (defining vicarious liability of employer). Further, under the New Mexico Tort Claims Act ("Tort Claims Act"), the County could be vicariously liable for the tortious acts committed by a "public employee while acting within the scope of duty. . . ." NMSA 1978 41-4-4(A). However, Defendant Long was not employed by the County, but with Court Services, with which the County contracted to transport the Plaintiff.[4]

---

[4] *See Monett v. Dona Ana County Sheriff's Posse*, 114 N.M. 452, 456 (Ct.App.1992) (under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligent acts of an employee when committed during the course and scope of the employee's employment). The Court notes that vicarious liability of employers are generally premised on negligent acts of employees, whereas here it is reasonably certain that Defendant Long's alleged acts were intentional. However, the nature of those acts are not dispositive to the analysis being undertaken here.

In a similar vein, the Court makes no finding regarding whether a waiver exists under the Tort Claims Act – first, because Plaintiff does not refer to any specific provisions of the Tort

Defendants contend that the facts in this case would not meet the test for establishing an employer-employee relationship between the County and Court Services employees. The principal test for finding an employer-employee relationship is whether the employer has the right to exercise control over not only the results to be obtained but also the manner in which the details of the work are to be accomplished. *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 101 (N.M. 1987). Mere suggestions by the employer nor the "directing control essential to co-ordinate the several parts of a larger undertaking" do not affect the relationship. *Campbell v. Smith*, 68 N.M. 373, 377, 362 P.2d 523, 526 (N.M.1961).

Plaintiff alleges that both the County and Court Services failed to conduct reasonably competent background checks, failed to properly train Court Services personnel and failed to maintain adequate policies regarding the employment of Court Services staff. Compl., ¶¶ 25, 26, and 29. However, there are no allegations suggesting that the County had a duty to carry out these functions, or that the County had any obligation to control Court Services's staff in terms of hiring, firing and conducting performance evaluations.

Relying on the Restatement Second of Torts, Plaintiff implicitly argues the existence of a duty on the part of Lincoln County to oversee the training and supervision of Court Services employees:

> One who is under a statutory duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the negligence of a contractor employed by him in failing to exercise reasonable care to provide such safeguards or precautions.

Rest.Torts § 424. This language provides that only if Lincoln County is under a duty to provide

---

Claims Act, and second, because it is clear that Defendant Long is not a County employee, according to Plaintiff's own allegations. Compl., ¶ 6.

specified safeguards or precautions for the safety of others by statute or administrative regulation will it be subject to liability caused by the failure of an independent contractor to provide such safeguards or precautions. In the absence of a statute or regulation creating a duty on behalf of Lincoln County to provide safeguards to Plaintiff while being transported by Court Services, Inc., the County cannot be subject to liability for the conduct of employees of Court Services.

Plaintiff asserts that Defendants, including the County, failed to comply with 42 U.S.C. § 13726,[5] which Plaintiff construes as setting forth a non-delegable duty of care on the part of the County to prisoners in its custody. However, Plaintiff misreads the plain language of § 13726, which states:

> (1) Increasingly, States are turning to private prisoner transport companies as an alternative to their own personnel or the United States Marshals Service when transporting violent prisoners.
>
> (2) The transport process can last for days if not weeks, as violent prisoners are dropped off and picked up at a network of hubs across the country.
>
> (3) Escapes by violent prisoners during transport by private prisoner transport companies have occurred.
>
> (4) Oversight by the Attorney General is required to address these problems.
>
> (5) While most governmental entities may prefer to use, and will continue to use, fully trained and sworn law enforcement officers when transporting violent prisoners, fiscal or logistical concerns may make the use of highly specialized private prisoner transport companies an option. Nothing in sections 13726 to 13726c of this title should be construed to mean that governmental entities should contract with *private prisoner transport companies* to move violent prisoners; however when a government entity opts to use a private prisoner transport company to move violent prisoners, *then the company should be subject to regulation* in order to enhance public safety.

42 U.S.C.A. § 13726 (emphasis added). In relying on this statute, Plaintiff appears to recognize

---

[5] Parties refer to this statute also as "Jeanna's Act." Compl., ¶ 30; Doc. 8 at 5.

that as a private transport company, Court Services is essentially an independent contractor. The plain language of the provision allows a governmental entity such as Lincoln County to engage a private transport company, and that if it does so, it is the *private transport company* that is subject to the requirements of the statute. Based on this language – and contrary to Plaintiff's contention – the duty to transport prisoners is expressly delegable to a private company. Thus, Plaintiff has not shown that the County had a duty to provide safeguards or precautions for the safety of prisoners transported by transported by Court Services's employees.

Plaintiff acknowledges that the general rule is that the employer of an independent contractor is not responsible for the negligence of the contractor or his employees. *Saiz v. Belen School Dist.*, 113 N.M. 387, 393 (N.M. 1992). However, Plaintiff argues that the facts of this case fall within one of the exceptions to that rule: an employer of an independent contractor engaged in an inherently dangerous activity has a non-delegable duty to ensure that reasonable precautions are taken by contractors to prevent injury to third parties. 113 N.M. at 400; *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430 (Ct. App. 1995).[6] Thus, the relevant inquiry is whether prisoner transport is an inherently dangerous activity.

Plaintiff offers several cases in support of its position that prisoner transport is an inherently dangerous position. Unfortunately for Plaintiff, none of these cases actually hold much weight for two reasons. First, none of the cases cited by Plaintiff are New Mexico cases;

---

[6] There are other exceptions as well, such as: when an employer has an independent duty pursuant to statute or regulation to provide specific safeguards or precautions for the safety of others; or when the employer exercises a degree of supervisory control over the independent contractor and fails to exercise such control with reasonable care. *See S.A. v. Marinex Const. Co., Inc.*, 477 F.Supp.2d 690, 693 (D.S.C.,2007) (citing Restatement (Second) of Torts, §§ 414 and 424). It should be clear from the foregoing discussion that none of these other exceptions apply in this case.

and second, the facts are not analogous.  The vast majority of the cited cases do not deal with either prisoner transport *or* an allegedly inherently dangerous activity.[7]  Rather, these cases involve the provision of medical care to inmates, or maintaining the health or safety of incarcerated prisoners.

In one of these cases, *Williams v. Department of Corrections*,  224 Ga.App. 571, 575, 481 S.E.2d 272, 276 (Ga.App.,1997), a state prisoner who was being housed at a county jail was injured when the tractor he was operating while mowing grass on a highway right-of-way overturned.  The supervisor overseeing the mowing operations, Officer Mike Harris ("Harris"), was a county employee. The Georgia appellate court held that the state department of corrections had a nondelegable duty to protect the safety and health of state inmates that could not be relieved by employing independent contractors.  The court also found that material fact issues existed as to whether the work in which prisoner was involved was inherently dangerous so as to impose duty on the state regardless of the county employee's county employee's status.[8]  The holding in the *Williams* case does not answer any of the legal questions in the instant case.  Aside from not having any precedential value because it is not a New Mexico case, the court in *Williams* relied in part on a state statute which the court found gave rise to a non-delegable duty by the state department of corrections to protect the safety and health of state inmates.[9]  Other

---

[7] *See* Resp. at 5.

[8] There was a possibility of an "agency" theory in the *Williams* case because in that case, the county had a contract with the state department of corrections to house state prisoners for $10 per day.  In addition, it was a county employee who allegedly injured the state prisoner/plaintiff.  This sort of relationship does not exist in the instant case.

[9] *See* OCGA ("Official Code of Georgia Annotated") § 42-2-11(c): "The board shall adopt rules governing the assignment, housing, working, feeding, clothing, treatment, discipline, rehabilitation, training, and hospitalization of all inmates coming under its custody."

than 42 U.S.C. § 13726, which I have found does not create a non-delegable duty of care on the part of the County to prisoners in its custody, Plaintiff does not offer any other statutory basis for the existence of such a duty. Last, the *Williams* case found that there was a factual dispute as to whether the activity undertaken which led to plaintiff' injury was an inherently dangerous task, specifically, that a jury could find that the act of cutting wet grass with a tractor on a steep incline could be considered an inherently dangerous task that placed the prisoner in harm's way. With regard to the instant case, a female prisoner being transported and becoming a victim of a sexual assault is not the sort of occurrence that would render the transportation of prisoners inherently dangerous, nor would there appear to be an evolving dispute of fact on that issue.

Plaintiff misrepresents the holding in another case. *Thomas v. Harris County*, 30 S.W.3d 51 (Tex.App. 2000). Plaintiff cites to *Thomas* for the proposition that public policy imposed a duty on the county for actions by those operating correctional facilities. Resp. at 5. However, that case actually held that the county could *not* be held liable for actions of physicians who provided medical treatment to an inmate in a county jail. The court found that the physicians were employees of a university health science center and that an agreement executed between the county and the health center explicitly provided that physicians were not employees of the county. Thus, *Thomas's* holding is contrary to Plaintiff's position.

The only case cited by Plaintiff which concerns long distance prisoner transport is another non-New Mexico case, *Paull v. Park County*, — P.3d —, 352, Mont. 465, 2009 WL 3176874 (2009). The plaintiff in *Paull* was injured in a rollover accident while being transported from Florida to Montana for probation revocation proceedings. The accident was allegedly caused by negligent or reckless driving on part of driver who taunted prisoners by swerving the vehicle as prisoners attempted to urinate into plastic cups or water bottles. The

court in that case held that the private prisoner transportation company's transportation of probationer was an inherently dangerous activity such that the county, as the party that contracted with company to have probationer transported, could be held vicariously liable for probationer's injuries resulting from rollover accident.

The Court agrees with Defendants that prisoner transport would not qualify as an inherently dangerous activity under the factors set out by New Mexico law.  The three-factor test used to determine whether an activity is inherently dangerous are whether: (1) the activity must involve an unusual or peculiar risk of harm that is not a normal routine matter of customary human activity; (2) the activity is likely to cause a high probability of harm in the absence of reasonable precautions; and (3) the danger or probability of harm must flow from the activity itself when carried out in its ordinary, expected way, such that reasonable precautions aimed at lessening the risk can be expected to have an effect.  *Gabaldon v. Erisa Mortgage Co.*, 128 N.M. 84, 87 (N.M.,1999).  The third factor is most germane to the Court's analysis, but weighs in favor of not finding prisoner transport to be an inherently dangerous activity. Prisoner transport, if performed in its ordinary, expected manner, does not result in the sexual assault of prisoners. In other words, the harm alleged in this case did not flow from the activity of prisoner transport as it would be normally carried out.  Accordingly, the exception to the general rule that employers are not liable for the acts of their independent contractors, which is based on inherently dangerous activity, does not apply to this case.

### III.     § 1983 Claims against Defendant Virden

Defendants initially argued that Plaintiff has not alleged sufficient facts to support a supervisory claim against Defendant Virden, and also argued that a stay of discovery was appropriate based on Defendant Virden's assertion of a qualified immunity defense.  However,

in the reply, after the Plaintiff clarified that Defendant Virden is being sued only in his official capacity, Defendants stated that they are abandoning the portion of their motion dealing with claims against Defendant Virden in his individual capacity (that is, any supervisory liability claims). In her response, Plaintiff concedes that any supervisory liability claims asserted against Defendant Virden would be moot.

Also, Defendants no longer seek a request for a stay, which was based on the assertion of a qualified immunity defense. Instead, Defendants seek dismissal of Defendant Virden from this lawsuit because suing Lincoln County as well as Defendant Virden in his official capacity is redundant. The Court agrees with Defendants.

Official capacity suits represent another way to plead an action against a governmental entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). A suit against a government officer in his official capacity is not a suit against the individual, but rather is a suit against the individual's office, which is the real party in interest. *Id.* at 165-66. Thus, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Damages awarded against a defendant in his official capacity are only recoverable against the governmental entity itself.

Where a plaintiff chooses to sue both the municipality and the municipal officials in their official capacities, courts routinely dismiss the official capacity claims as redundant. *See*, *e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (district court was correct in dismissing § 1983 claims against all municipal officers in their official capacities because allegations duplicated claims against governmental entities themselves); *Rose R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989) (affirming dismissal of § 1983 claim against school

superintendent in official capacity because school board was real party in interest); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (noting that suit against both city and mayor in his official capacity is really suit against only one defendant; nothing was added by suing mayor in his official capacity because city is liable for official actions of its senior policy-making official); *DeYapp v. Tracy*, No. Civ. 02-452 JP/RLP, slip op. at 12 (D.N.M. June 28, 2004) ("Because Plaintiff's claim against Chief McCloskey in his official capacity is duplicative of the claim brought against the City, the Court finds that the official capacity claim against Chief McCloskey should be dismissed."); *Sims v. Unified Gov't of Wyandotte County/Kansas City*, 120 F.Supp.2d 938, 944 (D.Kan. 2000) (claims against officials in official capacities are duplicative of claims against Unified Government and should be dismissed); *Doe v. Douglas County Sch. Dist.*, 775 F.Supp. 1414, 1416 (D. Colo. 1991) (where plaintiff brought § 1983 claim against school district and against school psychologist in his official capacity, court dismissed redundant official capacity claim as matter of judicial economy and efficiency).

Thus, I find that Plaintiffs' § 1983 claims brought against Defendant Virden in his official capacity are redundant, confusing, and unnecessary, because they are the same claims as those brought against Lincoln County. Consequently, to avoid confusion and because adding an official capacity claim "makes no practical difference," *see Jungels*, 825 F.2d at 1129, Plaintiffs' § 1983 official capacity claims against Defendant Virden shall be dismissed.

The defense of qualified immunity was available only to Defendant Virden in his individual capacity. *See Owen v. City of Independence*, 445 U.S. 622 (1980) (qualified immunity is not available as a defense to a governmental entity); *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). Thus, the Court need not consider whether a stay of discovery is appropriate, because not only is Defendant Virden dismissed from the case, but he would not be

able to assert a qualified immunity defense even if he remained in this lawsuit.

## IV.    Amendment of Complaint

Plaintiff does not specifically ask to amend the complaint, but rather asks the Court to decide whether she needs to amend the complaint. *See* Resp. at 6 ("If this Court believes plaintiff has failed to adequately allege facts to show a cause of action against County, she requests leave to amend her complaint.").

The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend is generally freely granted, it will not be permitted where the proposed amendment will be futile, or where the request is untimely and unduly prejudicial to the opposing part. *Castleglen, Inc., et al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993).

The Court agrees with Defendants' assessment that amending the complaint would be futile. The Court's findings on this issue were determined as matter of law, and no set of facts would allege sufficiently that Lincoln County is liable in tort for the acts of Court Services's employees.  Thus, to the extent that Plaintiff seeks to amend the complaint, that request is denied.

## Conclusion

The Court finds and concludes that Plaintiff has failed to state a state law tort claim against the Lincoln County Defendants because the County is not vicariously liable for allegedly tortious acts committed by the employees of Court Services, which is an independent contractor. Nor does the Court find that New Mexico law would find that prisoner transport is an inherently dangerous activity, such that it would comport with an exception to the rule that the employer of

an independent contractor is not responsible for the negligence of the contractor or his employees.

The Court also finds and concludes that, because Defendant Virden is sued in his official capacity only, Defendant Virden is dismissed from this lawsuit as a named Defendant. Defendants' initial request for dismissal of Defendant Virden based on insufficient pleading of a supervisory liability claim, as well as Defendants' initial request for a stay, shall be denied as moot.

Last, the Court finds and concludes that – to the extent that Plaintiff requests to amend the complaint – that request shall be denied because amendment would be futile.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss in Lieu of Answer and Request for Stay **(Doc. 8)** is GRANTED in that: (1) Plaintiff's state law tort claims asserted against the Lincoln County Defendants shall be DISMISSED with prejudice;[10] (2) Defendant Virden shall be DISMISSED as a party to this lawsuit;

**IT IS FURTHER ORDERED** that inasmuch as Plaintiff seeks to amend the complaint, that request is DENIED for reasons described in the above Memorandum Opinion and Order.

*(signature)*
UNITED STATES DISTRICT JUDGE

---

[10] As mentioned earlier, Defendants have not presented legal argument for dismissal of Plaintiff's *federal* claims against the Lincoln County Defendants, and thus this Memorandum Opinion and Order has no effect on those claims.